IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DENNIS LOGAN; WESTERN EMPIRES CORPORATION**, an Oregon corporation; **LOGAN FARMS, INC.**, an Oregon corporation; **LOGAN FARMS II, LLC**, an Oregon limited liability company; and **LOGAN INTERNATIONAL II, LLC**, an Oregon limited liability company, | CV 03-435-BR<br><br>OPINION AND ORDER |
| Plaintiffs, | |
| v. | |
| **FRANK TIEGS; WESTERN MORTGAGE & REALTY COMPANY**, a Washington corporation; and **PASCO FARMING, INC.**, a Washington corporation, | |
| Defendants. | |

**ARDEN E. SHENKER**
Shenker & Bonaparte LLP
One S.W. Columbia, Suite 475
Portland, OR 97258
(503) 294-1118

**W. EUGENE HALLMAN**
Hallman & Dretke
104 S.E. 5th Street
P.O. Box 308
Pendleton, OR 97801
(541) 276-3857

1 - OPINION AND ORDER

**ROBERT T. MAUTZ**
Mautz Baum & O'Hanlon LLP
101 S.E. Byers Ave.
P.O. Box 628
Pendleton, OR 97801
(541) 276-2811

    Attorneys for Plaintiffs

**ROBERT D. NEWELL**
**JOSEPH M. VANLEUVEN**
**ERIC L. DAHLIN**
Davis Wright Tremaine LLP
1300 S.W. Fifth Ave.
Portland, OR  97201
(503) 241-2300

    Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Defendant Western Mortgage and Realty Company's (WMC) Motion to Show Cause Why a Receiver Should Not Be Appointed (#167) to manage and to operate Defendant Logan Farms, Inc. (Logan II).  For the following reasons, the Court **GRANTS** WMC's Motion.

### BACKGROUND

This action involves multiple claims and counterclaims between the parties arising from their various business transactions primarily related to the farming and processing of potatoes.  WMC provided much of the financing to Plaintiffs to enable Plaintiffs to continue their potato farming and processing operations.  A full description of all the transactions and

2 - OPINION AND ORDER

relationships between the parties is set out in the Court's Opinion and Order issued December 13, 2004, and need not be repeated here.

For purposes of this Motion, however, it suffices to note the parties filed numerous cross-motions for summary judgment relating to most, if not all of, the agreements and financial transactions between the parties, and Defendants, including WMC, prevailed on most of the issues.

## **STANDARDS**

Federal law governs the appointment of a receiver in diversity cases. *View Crest Garden Apartments, Inc. v. U.S.* 281 F.2d 844, 845 (9th Cir. 1960), *cert. denied,* 364 U.S. 902 (1960). The court has broad discretion to appoint a receiver and may do so under "any circumstance which commends itself to a court of equity." *Id.* at 849.

"Federal courts contemplating the appointment of a receiver properly consider a number of factors. Most important among the factors are the adequacy of the security and the financial position of the mortgagor." *New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991). A receiver may be appointed "to collect rents pending foreclosure when the district court was satisfied that the security was inadequate or its adequacy was substantially doubtful and that the mortgagor

3 - OPINION AND ORDER

was insolvent or of doubtful financial standing."  *Id.*  Other relevant factors include the  plaintiff's probable success in the action, the possibility of irreparable injury to the plaintiff's interest in the property, and whether the plaintiff's interests sought to be protected will, in fact, be well-served by receivership.  *See* 12 Wright & A. Miller, *Federal Practice & Procedure* § 2983 at 22-24 (1973).

### DISCUSSION

In light of the Court's rulings on summary judgment, WMC asserts the appointment of a receiver is appropriate because Logan II is insolvent; Logan II's security is inadequate; and Defendant Dennis Logan, the owner of Logan II, has been using the income from Logan II's operations to subsidize and/or to pay the debts of his other companies such as Defendants Logan International II and Western Empires Corporation.

Logan II objects to the appointment of a receiver, asserts it is not insolvent, and alleges it has the ability to pay its obligations.

On April 6, 2005, the Court held an evidentiary hearing to determine the value of Logan II's farmland and whether that value was sufficient to secure its liabilities to WMC and others. Logan II presented testimony from an appraiser, which, when viewed in the light most favorable to Logan II, established a

value for the farmland in the range of $12 million. WMC, however, presented the testimony of an appraiser who valued the farmland in the range of $8 million. WMC also presented evidence that Logan II's secured and unsecured debt totals more than $13,500,000 and is growing at the rate of $25,000-30,000 per month.

Under any objective view of the evidence, the financial condition of Logan II is precarious at best. Moreover, Logan II appears to be insolvent with no apparent means to meet all of its obligations without increasing its already unmanageable debt. Indeed, the financial conduct and history of all the companies operated by Dennis Logan, including Logan II, can be summarized as a continual effort "to borrow from Peter to pay Paul."

Having considered all of the evidence, the Court finds most persuasive the evaluation of WMC's appraiser, which, in turn, leads the Court to conclude that the security is inadequate. In light of the increasingly weak financial condition of Logan II, the Court, therefore, is satisfied, in the exercise of its discretion, that the appointment of a receiver is appropriate.

## CONCLUSION

For these reasons, the Court **GRANTS** WMC's Motion to Show Cause Why a Receiver Should Not Be Appointed (#167) to manage and to operate Defendant Logan II. By separate Order, the Court

names a Receiver for Logan II, specifies its duties and powers, and sets the bond for the scope of its service.

IT IS SO ORDERED.

DATED this 16th day of May, 2005.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge