IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DENNIS LOGAN; WESTERN EMPIRES CORPORATION,** an Oregon corporation; **LOGAN FARMS, INC.,** an Oregon corporation; **LOGAN FARMS II, LLC,** an Oregon limited liability company; and **LOGAN INTERNATIONAL II, LLC,** an Oregon limited liability company, | 03-CV-435-BR<br><br>OPINION AND ORDER |
| Plaintiffs, | |
| v. | |
| **FRANK TIEGS; WESTERN MORTGAGE & REALTY COMPANY,** a Washington corporation; and **PASCO FARMING, INC.,** a Washington corporation, | |
| Defendants. | |

**ARDEN E. SHENKER**
Shenker & Bonaparte LLP
One S.W. Columbia, Suite 475
Portland, OR 97258
(503) 294-1118

1 - OPINION AND ORDER

**W. EUGENE HALLMAN**
Hallman & Dretke
104 S.E. 5th Street
P.O. Box 308
Pendleton, OR 97801
(541) 276-3857

**ROBERT T. MAUTZ**
Mautz Baum & O'Hanlon LLP ,
101 S.E. Byers Ave.
P.O. Box 628
Pendleton, OR 97801
(541) 276-2811

    Attorneys for Plaintiffs

**JOSEPH M. VANLEUVEN**
**ERIC L. DAHLIN**
Davis Wright Tremaine LLP
1300 S.W. Fifth Ave.
Portland, OR  97201
(503) 241-2300

    Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion to Compel Refund Payment (#294) of $3.85 million from Defendant Western Mortgage & Realty Company.  Plaintiffs contend they paid that approximate amount to satisfy the Corrected Judgment in favor of Western Mortgage as to the Mitsui Lease and L3 Farm Deed Counterclaims.  That Corrected Judgment was subsequently reversed and remanded for further proceedings by the Ninth Circuit.

    For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion.

2   - OPINION AND ORDER

## BACKGROUND

On December 13, 2004, and February 25, 2005, the Court issued Opinions and Orders resolving numerous Motions and Cross-Motions for Summary Judgment.

On May 16, 2005, the Court entered an Order Appointing a Receiver for Plaintiff Logan Farms II (Logan II).

On July 8, 2005, the Court entered a Judgment dismissing each of Plaintiffs' claims and awarding judgment in favor of Defendants on their Counterclaims.  The Judgment did not include an award of attorneys' fees.

On July 14, 2005, all Plaintiffs filed a Notice of Appeal to the Ninth Circuit.

On July 19, 2005, Plaintiffs Logan II and Logan International II (LIL) filed Petitions for Chapter 11 Debtor-in-Possession Bankruptcy in the District of Oregon.

On September 14, 2005, the Court entered a Stipulated Supplemental Judgment for Attorneys Fees and Costs in favor of each of the Defendants.

On October 11, 2005, Plaintiffs filed a Notice of Appeal to the Ninth Circuit regarding the Court's award of attorneys' fees and costs to Defendants.

On December 6, 2005, during the course of the Chapter 11 bankruptcy proceedings and pending a decision on the appeals to

3 - OPINION AND ORDER

the Ninth Circuit, all parties entered into a "Settlement and Limited Mutual Release" (Agreement).  The Agreement provides, *inter alia,* that Logan II and LIL "have entered into an agreement to sell [their] assets to RDO (RDO Transaction) under a plan of reorganization that provides for payment in full to their creditors."  The Agreement also provides in relevant part:

> 1.  The Logan Parties shall pay the Judgments in cash on closing of the RDO Transaction ("Closing").  Payment shall be in the sum of $12,490,519 (the "Payoff Amount") calculated as of December 31 2005. . . .

> \* \* \*

> 4.  If all or part of the Judgments are reversed on appeal *and the Tiegs Parties are required to repay any portion of the Payoff (the "Refund"),* the Refund will be placed in an interest bearing escrow account(s) or other agreed investments to be held *pending final orders in the Federal Cases*.

> \* \* \*

> 6.  Western Mortgage shall execute the bill of sale for the Mitsui Equipment to the purchaser in the RDO Transaction at Closing. *The purchase price for the Mitsui Equipment is included as part of, and not in addition to, the Payoff*.

> \* \* \*

(Emphasis added.)  Under the Agreement, the proceeds of the RDO Transaction were to be sufficient to satisfy the amounts owed by

4 - OPINION AND ORDER

all Plaintiffs on Western Mortgage's Counterclaims (Payoff Amount).

On February 7, 2006, this Court entered a Corrected Judgment as to the Mitsui Lease in favor of Western Mortgage on its Counterclaim against all Plaintiffs except Logan Farms, Inc., in the amount of $2,780,710.22; interest accrued before February 10, 2003, in the amount of $91,257; prejudgment interest at the rate of ten percent from February 10, 2003; and reasonable attorneys' fees and costs.

On February 21, 2006, Plaintiffs filed an Amended Notice of Appeal to the Ninth Circuit regarding the Corrected Judgment.

On December 13, 2007, the Ninth Circuit issued a Memorandum Opinion affirming the majority of this Court's rulings, but reversing and remanding those rulings related to Western Mortgage's Counterclaims on the Mitsui Lease and the L3 Farm Deed.[1]  *Logan v. Tiegs*, 2007 WL 4395572, at *3.

Trial on the remanded Counterclaims is scheduled to begin March 10, 2009.

## **DISCUSSION**

In light of the Ninth Circuit's reversal of this Court's

---

[1] The Ninth Circuit also reversed and remanded the Court's ruling as to Logan's claim pertaining to the Doosan Sales Pitch. That issue, however, is not relevant to the Motion now before the Court.

5  - OPINION AND ORDER

rulings in favor of Western Mortgage as to the Mitsui Lease and L3 Farm Deed Counterclaims and the attorneys' fee awards associated with them, Plaintiffs contend Western Mortgage is now required under Paragraph 4 of the Agreement to refund the monies that Plaintiffs paid to Western Mortgage to satisfy the Corrected Judgments on those Counterclaims pending resolution of the Mitsui Lease and L3 Farm Deed Counterclaims in the upcoming trial.

1.   **Appropriateness/Amount of Refund**.

The Court notes the parties did not specifically address the threshold requirements in Paragraph 4 of their Agreement that must be satisfied before the refund provision is triggered.  The Agreement requires a refund only if "all or part of [this Court's decision is] reversed on appeal *and* [Defendants] are required to repay any portion of the Payoff [Amount] (the Refund) . . . pending final orders in the Federal cases."  (Emphasis added.)  It is undisputed that the awards in this Court's Corrected Judgment in favor of Western Mortgage on the Mitsui Lease and L3 Farm Deed Counterclaims were reversed by the Ninth Circuit, but Plaintiffs have not yet established that Western Mortgage will be required to repay any portion of the Payoff Amount.  The Ninth Circuit held only that genuine issues of material fact exist as to how Plaintiffs' obligation to Western Mortgage on the Mitsui Lease should be paid and how the L3 Farm Deed should be

6  - OPINION AND ORDER

characterized.  It appears to this Court that the upcoming trial will determine whether any refund must be paid into escrow pursuant to Paragraph 4 of the Agreement and, if so, the amount of the refund pending "final orders in the Federal Cases."  As it stands now, the Ninth Circuit's decision does not compel a finding that Western Mortgage is "required to repay any portion of the [P]ayoff [Amount]."  Moreover, as noted, Plaintiffs have not established at this stage of the remand proceedings that they would be entitled to any refund on the principal amount of the Judgment (excluding estimated attorneys' fees and pre- and post-judgment interest on the L3 Farm Deed claim).

Nevertheless, after this matter was fully briefed, the Court requested the parties to address specifically the threshold requirements under their Agreement.[2]  In response to the request, the parties filed a Joint Status Report on September 25, 2008, in which they agreed "the parties' Settlement Agreement in bankruptcy preserved this Court's authority to determine the question of whether, when, and to what extent, [Defendants] should be required to make restitution [*i.e.,* a refund] in this case."  The parties appear to assume their Agreement allows a refund, if appropriate, even before further proceedings on remand take place.  The Court, therefore, acquiesces in that assumption.

---

[2] The Court was concerned that Paragraph 4 of the Agreement was ambiguous as to whether the refund requirement was triggered before or after further proceedings take place on remand.

7 - OPINION AND ORDER

**2.    Mitsui Lease Counterclaim.**

In April 2002, Western Mortgage paid Mitsui $1 million for the right to Mitsui's beneficial interest in Mitsui's Lease of potato-processing equipment to LIL.  Dennis Logan, Logan II, and Western Empires were guarantors of LIL's obligations on the Mitsui Lease.  In February 2003, LIL was in default on lease payments to Mitsui in the total amount of $3 million.

LIL and its guarantors allege Western Mortgage agreed to share equally with LIL the $2 million savings (Discount) obtained by Western Mortgage when it purchased Mitsui's beneficial interest in the equipment lease.  In turn, LIL agreed to pay Western Mortgage (1) the $1 million that Western Mortgage paid to purchase Mitsui's beneficial interest in the lease and (2) a one-half share of the $2 million Discount for a total payment of $2 million by LIL to Western Mortgage.

LIL contends its agreement with Western Mortgage allowed it to pay the $2 million to Western Mortgage on an amortized repayment schedule.  Western Mortgage, however, contends the agreement to share the Discount was based on LIL's immediate payment of the $2 million in cash.  In any event, LIL only tendered a single $20,000 payment, which Western Mortgage accepted.  Western Mortgage then demanded payment in full of the remaining balance of the $2 million.  When LIL did not pay that amount, Western Mortgage declared LIL to be in default and

8  - OPINION AND ORDER

demanded the entire $3 million Payoff Amount (*i.e.*, the entire $2 million Discount plus the $1 million actually paid by Western Mortgage for the right to Mitsui's beneficial interest in the Mitsui Lease).

As noted in its February 7, 2006, Corrected Judgment, this Court awarded Western Mortgage a judgment on its Counterclaim against LIL and LIL's guarantors (*i.e.,* all Plaintiffs except Logan Farms, Inc.) as to the Mitsui Lease.  LIL calculates the total Payoff Amount on the Corrected Judgment as to the Mitsui Lease is approximately $3.45 million.

In any event, the Ninth Circuit reversed this Court's ruling on the Mitsui Lease on the ground that a genuine issue of material fact exists as to LIL's contention that repayment of the $1 million paid by Western Mortgage to Mitsui and the $1 million that constitutes one-half of the Discount for a total of $2 million was to be amortized over time.

Plaintiffs contend the full amount of the Corrected Judgment as to the Mitsui Lease must be refunded by Western Mortgage and placed in an escrow account in accordance with Paragraph 4 of the Agreement because the Corrected Judgment as it pertains to the Mitsui Lease was satisfied from the proceeds of the RDO Transaction and the Corrected Judgment as to the Mitsui Lease was subsequently reversed.

Western Mortgage, however, contends its purchase of Mitsui's

9  - OPINION AND ORDER

interest in the equipment leased to LIL that was later sold to RDO during the bankruptcy of LIL and Logan II was legitimate, and Western Mortgage is now entitled to the proceeds of that sale regardless of the Corrected Judgment as it pertains to LIL; *i.e.*, Western Mortgage asserts it "would have been entitled to the sale proceeds" from the sale of equipment that Western Mortgage then owned "even in the absence of a judgment."

As for Plaintiffs' contention that Western Mortgage is required under the Agreement to refund the entire amount of the Corrected Judgment totaling approximately $3.45 million (which includes pre- and post-judgment interest and attorneys' fees), the Court concludes there is not any possibility that further proceedings will determine *all* of that amount will be refunded. The Ninth Circuit reversed only one part of this Court's ruling on the Mitsui Lease:  How the discount was to be applied.  The upcoming trial will determine whether there was an agreement between Western Mortgage and LIL to allow LIL to pay the $2 million on an amortized payment schedule.  Thus, even if Plaintiffs prevail, they will still owe at least $2 million.  The only issue will be how that debt is to be repaid.

As for Western Mortgage's contention that it would be entitled to the proceeds from the sale of the Mitsui Lease equipment in any event, the Court concludes the fact that Western Mortgage owned the Mitsui equipment that was sold in the RDO

10 - OPINION AND ORDER

Transaction is not relevant.  Paragraph 1 of the Agreement provides the total judgment amount of $12,490,519 is the Payoff Amount.  Paragraph 6 of the Agreement provides "[t]he purchase price for the Mitsui Equipment is included as part of, and not in addition to, the Payoff [Amount]."  Apparently under the Agreement, the proceeds from the Mitsui sale were commingled with the proceeds from all other sales to RDO to reach the Payoff Amount, and, subject to certain adjustments (*e.g.,* those set forth in Paragraph 3 of the Agreement), those proceeds establish the total amount required to satisfy the Corrected Judgment in this case.  In other words, the Mitsui transaction did not retain its individual character, and, therefore, whether Western Mortgage owned the Mitsui equipment before it was sold to RDO is not relevant.

In light of the above, the Court concludes if Western Mortgage is required to refund monies into an escrow account, the maximum amount of the refund as to the Mitsui Lease Judgment would be approximately $1.45 million.  *See* Section 1 above.

**3.   L3 Farm Deed Counterclaim**.

Dennis Logan delivered a warranty deed on his L3 Farm to Western Mortgage as part of an Asset Purchase Agreement.  Western Mortgage contends the deed transferred ownership of the L3 Farm to Western Mortgage and thereby entitled Western Mortgage to rent payments from Western Empires, a company

11 - OPINION AND ORDER

owned by Dennis Logan that continued operations on the L3 Farm after Dennis Logan executed the warranty deed.  Dennis Logan, however, contends the deed constituted an equitable mortgage given to Western Mortgage to secure outstanding loans and, therefore, entitled Western Empires to continue farming the land without paying rent.

In their Second Amended Complaint, Plaintiffs allege Defendants intentionally deceived Plaintiffs by, *inter alia,* misrepresenting the nature of the warranty deed relating to Dennis Logan's L3 Farm.  Western Mortgage thereafter asserted a Counterclaim for delinquent lease payments, property taxes, interest, and attorneys' fees.  This Court found in favor of Western Mortgage and entered a Corrected Judgment on February 7, 2006, for rent in the amount of $220,625, real-property taxes in the amount of $4,640.77 with interest, and reasonable attorneys' fees.  The Corrected Judgment was paid from the proceeds of the RDO Transaction.

The Ninth Circuit reversed the Court's finding that the L3 Farm Deed transferred ownership of the property to Western Mortgage on the ground that "although the L3 Farm [D]eed is absolute on its face, under Oregon law, if the parties' intent was to convey and receive the property as security instead, the true nature of the transaction may be shown by parol evidence." *Logan v. Tiegs,* 2007 WL 4395572, at *3.  Genuine issues of

12 - OPINION AND ORDER

material fact exist, therefore, as to the nature of the transaction and precluded a grant of summary judgment in favor of Western Mortgage.

Dennis Logan and Western Empires contend the Ninth Circuit's reversal of this Court's ruling on the L3 Farm Deed Counterclaim requires Western Mortgage to refund approximately $400,000 paid from the proceeds of the RDO Transaction. That amount includes the principal sum of approximately $220,000, plus pre- and post-judgment interest and attorneys' fees of approximately $180,000, for a total sum of approximately $400,000. Western Mortgage, however, contends a refund is unnecessary because, regardless of the outcome of the trial on its L3 Farm Deed Counterclaim, the parties have agreed "if rent is viewed as part of the debt secured by the mortgage" (*i.e.,* an equitable mortgage), "that part of the secured debt has been repaid." According to Western Mortgage, "[i]f the equitable mortgage is not established, then Western Mortgage's claim for rent was satisfied at the closing of the RDO sale." *See* Jt. Statement of Issues on Remand and Proposed Case Mgmt. Plan ¶ II©).

On this record, the Court agrees with Western Mortgage that even if the upcoming trial results in a recharacterization of the nature of the L3 Farm Deed, there is not a likelihood that the $220,000 owed by Dennis Logan and/or Western Empires on the principal sum of the Corrected Judgment will change. If

13 - OPINION AND ORDER

Plaintiffs prevail on remand, however, they will not be obligated on the attorneys' fees or the pre- and post-judgment interest, which total $180,000.  Pending the remand proceeding, therefore, it is appropriate for Western Mortgage to refund the sum of $180,000 (attorneys' fees and pre- and post-judgment interest) on the L3 Farm Deed Judgment in accordance with the parties' understanding of the terms of the Agreement.

In summary, pending determination of the issues remanded by the Ninth Circuit for further proceedings, the Court concludes Plaintiffs have established they are entitled to a refund of amounts previously paid to satisfy the Mitsui Lease Counterclaim Judgment in the amount of $1.45 million ($1 million discount plus pre- and post-judgment interest and attorneys' fees), and to satisfy the L3 Farm Deed Counterclaim in the amount of $180,000 (pre- and post-judgment interest and attorneys' fees).  Those amounts shall be refunded in accordance with the terms of the Agreement.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Compel Refund Payment (#294).  Accordingly, Defendant Western Mortgage shall refund $1.45 million on the Mitsui Lease Counterclaim Judgment and $180,000 on

14 - OPINION AND ORDER

the L3 Farm Deed Counterclaim Judgment in accordance with the terms of the parties' Agreement.

IT IS SO ORDERED.

DATED this 1st day of October, 2008.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

15 - OPINION AND ORDER