IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DENNIS LOGAN; WESTERN EMPIRES                03-CV-435-BR
CORPORATION, an Oregon corporation;
LOGAN FARMS, INC., an Oregon                 OPINION AND ORDER
corporation; LOGAN FARMS II, LLC,
an Oregon limited liability company;
and LOGAN INTERNATIONAL II, LLC,
an Oregon limited liability company,

            Plaintiffs,

v.

FRANK TIEGS; WESTERN MORTGAGE & REALTY
COMPANY, a Washington corporation; and
PASCO FARMING, INC., a Washington
corporation,

            Defendants.

_____

OREGON POTATO COMPANY, a                     03-CV-490-BR
Washington corporation,
                                             OPINION AND ORDER
            Plaintiff,

v.

LOGAN INTERNATIONAL II, LLC,
an Oregon limited liability
company, and DENNIS LOGAN,

            Defendants.

1 - OPINION AND ORDER

**LOGAN INTERNATIONAL II, LLC,**
**an Oregon limited liability**
**company, and DENNIS LOGAN,**

       **Third-Party Plaintiffs,**

**v.**

**FRANK TIEGS, WESTERN MORTGAGE**
**& REALTY COMPANY, a Washington**
**corporation, and BAKER PRODUCE,**
**INC., a Washington corporation,**

       **Third-Party Defendants.**

**ARDEN E. SHENKER**
Shenker & Bonaparte LLP
One S.W. Columbia, Suite 475
Portland, OR 97258
(503) 294-1118

**W. EUGENE HALLMAN**
Hallman & Dretke
104 S.E. 5th Street
P.O. Box 308
Pendleton, OR 97801
(541) 276-3857

**ROBERT T. MAUTZ**
Mautz Baum & O'Hanlon LLP
101 S.E. Byers Ave.
P.O. Box 628
Pendleton, OR 97801
(541) 276-2811

          Attorneys for Dennis Logan;
          Western Empires Corporation;
          Logan Farms, Inc.; Logan Farms
          II, LLC; and Logan International
          II, LLC

JOSEPH M. VANLEUVEN
ERIC L. DAHLIN
Davis Wright Tremaine LLP
1300 S.W. Fifth Ave.
Portland, OR  97201
(503) 241-2300

        Attorneys for Frank Tiegs;
        Western Mortgage & Realty
        Company; Pasco Farming, Inc.;
        Oregon Potato Company; and
        Baker Produce, Inc.


**BROWN, Judge.**

These matters are before the Court on Defendant Western Mortgage and Realty Company's Second Motion for Attorneys' Fees (#378) and Request for an Award of Appellate Attorney's Fees (#274) in Case No. 03-CV-435-BR (*Logan*) and the Motion[1] of Defendants Frank Tiegs, Oregon Potato Company, and Pasco Farming, Inc. (hereinafter referred to collectively as the Tiegs Appellees) for an Award of Appellate Attorneys' Fees (#185) in Case No. 03-CV-490-BR (*OPC*).

For the following reasons, in *Logan* the Court **GRANTS** Defendant Western Mortgage's Second Motion for Attorneys' Fees in the amount of **$282,095** and **GRANTS** Western Mortgage's Request for an Award of Appellate Attorneys' Fees in the amount of **$5,000**; in *OPC* the Court **GRANTS** the Tiegs Appellees' Request for an Award of Appellate Attorneys' Fees in the amount of **$96,396**.

---

[1] Motion (#185) was originally filed in the Ninth Circuit, which transferred it to this Court on March 10, 2008.

3 - OPINION AND ORDER

## **BACKGROUND**

The complex factual and procedural background in *Logan* and
*OPC* is set forth in the Court's December 13, 2004, Opinion and
Order (#135-*Logan,* #125-*OPC)* in which the Court addressed
numerous Motions/Cross-Motions for Summary Judgment and in the
Court's July 2, 2009, Final Verdict - L3 Farm Deed (#355) in
*Logan* in which the Court addressed the legal consequences of an
advisory jury Verdict rendered after a trial in March 2009 of the
L3 Farm Deed Claim.  The same jury rendered a Final Verdict in
favor of Western Mortgage as to the Mitsui Claim and
Counterclaim.  The L3 Farm Deed Claim and the Mitsui Claim and
Counterclaim had been remanded for trial by the Ninth Circuit
after Logan appealed this Court's unfavorable summary-judgment
rulings.  *See Logan v. Tiegs,* 262 Fed. Appx. 739, No. 05-35932,
2007 WL 4395572 (9th Cir. Dec. 13, 2007)(Mem).

On November 19, 2009, this Court issued an Opinion and Order
(#375) in *Logan* in which it held Western Mortgage is entitled
to reasonable attorneys' fees incurred in this Court and on
appeal in the Ninth Circuit as to the Mitsui Claim and
Counterclaim.  The Court also issued an Opinion and Order (#187)
in *OPC* in which it held Western Mortgage and the Tiegs Appellees
are entitled to reasonable attorneys' fees incurred on appeal
in the Ninth Circuit arising from numerous other financial
obligations owed by the Logan Appellants to the Tiegs Appellees

Mitsui Claim and Western Mortgage that were not related to the and Counterclaim.

The Court incorporates by reference the procedural and factual background and the rulings set forth in this Court's Opinion and Order on Summary Judgment, the Ninth Circuit's Memorandum Decision on Appeal, this Court's Final Verdict following remand, and this Court's Opinion and Orders as to the entitlement of Western Mortgage and the Tiegs Appellees to reasonable attorneys' fees.

The issues before the Court are the amount of reasonable attorneys' fees to which Western Mortgage is entitled as the prevailing party on the Mitsui Claim and Counterclaim asserted in *Logan*, the amount of reasonable appellate attorneys' fees to which Western Mortgage is entitled in ultimately prevailing at trial on remand as to the Mitsui Claim and Counterclaim, and the amount of reasonable attorneys' fees to which the Tiegs Appellees are entitled as the prevailing party in the Ninth Circuit following the appeal by Dennis Logan and his companies of numerous adverse summary-judgment rulings made by this Court in *OPC* relating to numerous transactions between Dennis Logan and his companies and Frank Tiegs and his companies, including Oregon Potato Company.[2]

---

[2] Neither party is entitled to an award of attorneys' fees as to the L3 Farm Deed Claim. *See* Supple. J. (#392) in *Logan* and (#188) in *OPC*.

5 - OPINION AND ORDER

## STANDARDS

The Court has subject-matter jurisdiction over this matter based on diversity of citizenship under 28 U.S.C. § 1332 (a)(1). The Court applies Oregon substantive law when deciding the amount of a reasonable attorneys' fees. *See Price v. Seydel*, 961 F.2d 1470, 1475 (9th Cir. 1992)("A federal court sitting in diversity applies state law in deciding whether to allow attorney's fees when those fees are connected to the substance of the case.").

Under Oregon law the prevailing party is "entitled to reasonable attorneys' fees in addition to costs and disbursements" in any action based on a contract that specifically provides for an award of attorneys' fees to the prevailing party. Or. Rev. Stat. § 20.096(1). *See also Wilkes v. Zurlinden*, 328 Or. 626, 631-32 (1999). The "prevailing party is the party who receives a favorable judgment . . . on the claim." Or. Rev. Stat. § 20.077. When the prevailing party is entitled to attorneys' fees, the only relevant inquiry is whether the prevailing party's requested attorneys' fees are reasonable. *See, e.g., Benchmark NW., Inc. v. Sambhi*, 191 Or. App. 520, 523 (2004)(Under Or. Rev. Stat. § 20.096(1), an award of attorneys' fees "is mandatory; [and] the trial court has no discretion to deny it, although it does have discretion as to what amount is

6 - OPINION AND ORDER

'reasonable.'"). Whether attorneys' fees are reasonable is a factual determination for the trial court. *See, e.g., Bennett v. Baugh*, 164 Or. App. 243, 247 (1999).

Reasonable attorneys' fees include such costs as photo-copies, computer-aided research, and deposition costs that are directly billed to and paid for by the client. *Robinowitz v. Pozzi,* 127 Or. App. 464, 470-71 (1994).

The Court has an independent duty to review a motion for attorneys' fees for reasonableness. *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1993).

In this case, attorneys' fees are authorized by contract. The Court, therefore, must consider the following factors that are relevant in light of the nature of the controversy and the history of this matter during the summary-judgment phase, the appellate phase, and the subsequent trial on remand:

1.  The "objective reasonableness of the claims and defenses;"

2.  the "objective reasonableness of the parties and the diligence of the parties in seeking to settle the dispute;"

3.  the "novelty and difficulty of the questions involved;"

4.  the "skill required to perform the legal services properly;"

5.  the "amount involved and the result obtained;"

6.  the "fee customarily charged in the locality for similar legal services;" and

7.  the "experience, reputation, and ability of the lawyers performing the services."

*See* Or. Rev. Stat. § 20.075(1)(b), (f); and § 20.075(2)(a), (c), (d) and (g). *See also Dockins v. State Farm Ins. Co.*, 330 Or. 1, 5-6 (2000).


## **DISCUSSION**

Logan paid Western Mortgage $709,700 in attorneys' fees based on a Final Judgment entered in this Court after the Court granted Western Mortgage summary judgment as to all claims and counterclaims in *Logan* and *OPC*.  Logan then appealed the Court's summary-judgment rulings to the Ninth Circuit.  Western Mortgage's right to those attorneys' fees was not affected by the Ninth Circuit's decision.

Western Mortgage now seeks additional attorneys' fees and expenses in the sum of $368,187[3] incurred in *Logan* preparing for and trying the Mitsui Claim and Counterclaim following remand from the Ninth Circuit; in post-trial proceedings relating to the Mitsui Claim and Counterclaim incurred primarily in preparing the pending attorneys' fee motion; and $10,000 incurred in defending

---

[3] Included in this amount are otherwise compensable attorneys' fees of $5,280 derived from reimbursable costs and expenses directly billed and paid for by Western Mortgage.

8 - OPINION AND ORDER

against Logan's appeal of this Court's summary-judgment ruling in *Logan* as to the Mitsui Claim and Counterclaim.

The Tiegs Appellees seek $96,396 incurred in *OPC* success-fully defending against Logan's appeal to the Ninth Circuit of all of the summary-judgment rulings issued by this Court in favor of the Tiegs Appellees.

A.    **Entitlement of Western Mortgage/Tiegs Appellees  
       to Attorneys' Fees**.

The Court has previously determined the Tiegs Appellees are entitled to an award of reasonable attorneys' fees arising from their successful defense against Logan's appeal to the Ninth Circuit of this Court's numerous summary-judgment rulings in *OPC* and Western Mortgage is entitled to reasonable attorneys' fees incurred in the Ninth Circuit defending against Logan's appeal of this Court's summary-judgment ruling in favor of Western Mortgage.  *See* Opin. and Order issued Nov. 19, 2009.  Although the Ninth Circuit reversed this Court's ruling as to the Mitsui Claim and Counterclaim, Western Mortgage ultimately prevailed at the trial following remand from the Ninth Circuit.  Although Logan disputes the amounts, it does not dispute that the Tiegs Appellees and Western Mortgage are entitled to reasonable attorneys' fees incurred in proceedings in the Ninth Circuit.

**B.    Reasonableness of the Attorneys' Fees Requests**.

Western Mortgage and the Tiegs Appellees seek a total of $474,583 for the legal services incurred on their behalf on appeal and on Western Mortgage's behalf during the trial of the Mitsui Claim and Counterclaim on remand.  In response, Logan "reckon[s] the maximum awardable to defendants would be less than $200,000, and a more reasonable amount would be less than $150,000."

The Court addresses each of the relevant factors set out in Oregon Revised Statute §20.075.  *See Dockins,* 330 Or. at 5-6. The Court's analysis primarily focuses on Western Mortgage's claim for attorneys' fees pertaining to the Mitsui Claim and Counterclaim, but also applies to the Tiegs Appellees' claim for attorneys' fees because the same attorneys represented those parties.

**1.    Objective Reasonableness of the Appeals of Western Mortgage and Tiegs Appellees and the Trial of Western Mortgage's Mitsui Claim and Counterclaim on Remand.**

This Court granted summary judgment to Western Mortgage as to Mitsui Claim and Counterclaim.  The Ninth Circuit disagreed on the ground that Plaintiff Logan International II, LLC ("LIL") presented sufficient evidence to establish that a genuine issue of material fact existed as to the parties' understanding of how the $2 million discount of the loan owed by LIL to Mitsui, an

amount that was negotiated by Western Mortgage with Mitsui, should be applied.  During the trial on remand, evidence was presented by both parties on that issue, and the jury found in favor of Western Mortgage.

The Tiegs' Appellees also prevailed on summary judgment and on appeal of all of their Counterclaims.

Accordingly, the Court finds on this record that the positions taken by Western Mortgage and the Tiegs Appellees on appeal were objectively reasonable.

### 2. Objective Reasonableness and Diligence of Western Mortgage in Seeking to Settle the Mitsui Claim and Counterclaim.

Logan and Western Mortgage diligently sought to settle the dispute over the Mitsui Lease after the summary-judgment proceeding and tried again after remand from the Ninth Circuit and before trial.  Of the three claims that remained, the parties settled the Doosan Claim but could not reach agreement on the Mitsui Claim and Counterclaim or the L3 Farm Deed Claim.  At trial the jury split its Verdict and found in favor of Western Mortgage on the Mitsui Claim and Counterclaim and in favor of Logan on the L3 Farm Deed Claim.

On this record, the Court finds both parties were diligent in trying to resolve their differences and each party had objectively reasonable grounds to believe that it might prevail at trial on the remaining claims and counterclaims.

11 - OPINION AND ORDER

**3.   The Novelty and Difficulty of the Mitsui Claim
       and Counterclaim.**

The Mitsui Lease transaction involved Western Mortgage's
purchase for $1 million of LIL's beneficial interest in an
Operating Lease Agreement whereby LIL leased potato-processing
equipment from Mitsui.  At the time LIL was in default under the
terms of the Lease Agreement and owed Mitsui $3 million.
Defendant Dennis Logan had guaranteed LIL's debt.  Western
Mortgage paid Mitsui $1 million to pay off LIL's account and
agreed to split the $2 million discount with LIL, which left LIL
with a debt of $1 million to Western Mortgage.  The dispute
between Logan and Western Mortgage was whether Western Mortgage
agreed to amortize LIL and Dennis Logan's $1 million repayment
obligation over time.  After LIL filed for bankruptcy, Western
Mortgage sold the potato-processing equipment, which complicated
the parties' resolution of their  dispute.  Although Western
Mortgage's expert did not testify at trial, the parties each
retained an expert to support their respective claims and
counterclaims.

This Court presided over the summary-judgment phase of this
case and trial on remand.  The Court agrees with Western Mortgage
that the Mitsui Lease transaction involved complex, somewhat
abstract and unusual factual issues in addition to difficult
legal issues.

**4.   The Skills Required of Counsel.**

Counsel for both Western Mortgage and Logan needed and exhibited considerable skill to present the facts and argue the legal issues involved in the Mitsui transaction with a coherency and clarity sufficient to allow the jury to render a fair Verdict.

**5.   The Amount Involved and the Result Obtained.**

Two months before trial, LIL claimed $1 million as damages arising from Western Mortgage's alleged failure to honor the purported "share-the-discount" agreement between the parties as to the Mitsui Lease and additional damages of $7,704,459 that reflected the present value of LIL's alleged damages arising from the Mitsui Lease transaction.

The jury's Verdict in favor of Western Mortgage was a substantial and hard-fought victory for Western Mortgage, particularly in light of the skilled, aggressive, and persistent challenge by LIL and its attorneys at every stage of this litigation and at trial.

**6. Customary Attorneys' Fee Rates Charged in Oregon.**

In September 2002 and December 2007, the Oregon State Bar issued "Economic Surveys" setting out the average billing rates for attorneys with varying practices and experiences who practice in Portland, Oregon, where the attorneys for Western Mortgage and the Tiegs Appellees maintain their legal practices.

13 - OPINION AND ORDER

a.  <u>Appellate Attorneys' Fees</u>.

Logan filed its Notice of Appeal in October 2005, and the Ninth Circuit issued its decision in December 2007.

The attorneys' fees that Western Mortgage and the Tiegs Appellees incurred in the course of the appeal to the Ninth Circuit were for services performed between August 2005 and December 2007.

The Court concludes the Oregon State Bar 2002 Economic Survey, adjusted for inflation, is an appropriate benchmark of reasonable hourly rates billed by attorneys in the Portland area for the type of appellate work performed by counsel on behalf of Western Mortgage and the Tiegs Appellees from 2005 to 2007.  The Court notes the Consumer Price Index for Portland, Oregon, increased by approximately 10% from the second half of 2002, when the 2002 Economic Survey was published to December 2006, which was the approximate mid-point in the appellate process in this case.  The Court concludes that the customary hourly rates charged by attorneys with skills and experience similar to the attorneys representing the Tiegs Appellees and Western Mortgage on that appeal, as increased by an inflation factor of 10%, is an appropriate benchmark for purposes of determining the reasonableness of the fees charged by the attorneys representing Western Mortgage and the Tiegs Appellees during the Ninth Circuit appeal.

14 - OPINION AND ORDER

b.  <u>Attorneys' Fees on Remand from the Ninth Circuit</u>.

The Court concludes the Oregon State Bar 2007 Economic Survey, which was published in the latter part of 2007, with a reasonable adjustment for inflation through December 2009, is an appropriate barometer of customary fees in the Portland area for the type of post-appellate trial preparation, trial, and post-trial work performed by counsel on behalf of Western Mortgage between January 2008 and December 2009.

The substantial majority of the attorneys fees incurred by Western Mortgage after remand from the Ninth Circuit was for services performed between July 2008 and December 2009.  The trial on remand took place in March 2009, the approximate midpoint of the remand process.  From July 2008 through March 2009 the consumer price index for Portland, Oregon, rose by approximately 2.45%.

Accordingly, the Court concludes that an approximation of the customary hourly rates charged by attorneys with skills and experience similar to the attorneys representing Western Mortgage at trial on the remand from the Ninth Circuit, as set forth in the 2007 Economic Survey, and increased by an inflation factor of 2.45%, is an appropriate benchmark for purposes of determining the reasonableness of the fees charged by the attorneys representing Western Mortgage as of the second half of 2007.

### 7.   The Skill, Experience, Reputation, and Abilities of Attorneys Performing Services.

VanLeuven and Dahlin have a combined total of 35 years of experience litigating substantial and complex business disputes. Their counterparts, Shenker, Mautz, and Hallman,[4] are highly skilled attorneys and formidable trial and appellate litigators who have more experience than their opponents.  At the trial of the Mitsui Claim and Counterclaim, all counsel exhibited a high level of skill and the highest degree of professionalism in presenting and arguing their clients' cases.

The skill and persuasiveness of all counsel is reflected by the fact that the same jury, in addition to being asked to decide the Mitsui Claim and Counterclaim, was also asked to make findings on an equally complex claim relating to Plaintiff Dennis Logan's "L3 Farm Deed" claim.  As to that matter, the jury found in favor of Plaintiff Dennis Logan against Western Mortgage.

### 8.   Attorney Fee Rates Billed by Attorneys for the Tiegs Appellees and Western Mortgage.

In light of the length and complexity of this case, multiple attorneys have been employed by both parties.  The Court identifies the lawyers primarily involved in the representation of Western Mortgage and the Tiegs Appellees during the relevant time-frame, their years of legal experience, the hourly rates

---

[4] Hallman was an active participant in these proceedings on behalf of Logan outside of the presence of the jury.

they billed Western Mortgage and the Tiegs Appellees for their legal services, and the customary rates in Portland as set forth in the Oregon State Bar 2002 and 2007 Economic Surveys adjusted by the appropriate rates of inflation.

    a.  <u>Joseph VanLeuven</u>.[5]

VanLeuven is a partner in the Davis Wright Tremaine (DWT) law firm, a large regional law firm in the Pacific Northwest. As of January 2008, VanLeuven had practiced law for 25 years in Portland. His practice includes complex commercial litigation with a growing focus on the agricultural industry in eastern Oregon and Washington. During the periods in question, his billing rates ranged from $325-$365 for the appellate work and $390-$405 per hour for the trial work on remand from the Ninth Circuit.

    (1)  <u>Appellate Attorneys' Fees</u>.

In the 2002 Economic Survey, Portland-area attorneys with legal practices similar to VanLeuven who billed at least $333 per hour were in the 95th percentile of such attorneys. Adjusted for inflation, that rate increased to $366 per hour.

---

[5] The Court's award of attorneys' fees to Western Mortgage before the appeal to the Ninth Circuit for work performed two-three years earlier was based on a $305 hourly rate for VanLeuven and a $246 hourly rate for Dahlin.

17 - OPINION AND ORDER

As set forth above, VanLeuven's hourly rates for his appellate work ranged from $325-$365, placing him squarely at the 95th percentile of attorneys with similar practices.  The Court, however, finds those hourly rates for the appellate work are reasonable based on VanLeuven's demonstrated advocacy skills and experience.

(2)  <u>Trial Attorneys' Fees</u>.

In the 2007 Economic Survey, Portland-area attorneys with legal practices similar to VanLeuven who billed at least $445 per hour were in the 95th percentile of such attorneys.  VanLeuven's hourly rates for his trial work on remand ranged from §390-$405, placing him at the upper end of the range between the 75th and 95th percentiles without any adjustment for inflation.  The Court finds the hourly rates VanLeuven charged at trial following remand from the Ninth Circuit were reasonable.

b.  <u>Eric Dahlin</u>.

Dahlin is also a partner at DWT.  As of January 2008, he had practiced law in Portland for ten years with extensive experience in complex commercial litigation in state and federal courts.  During the periods in question, his billing rate ranged from $290-335 per hour for the appellate work and was $350 per hour for the post-appellate trial work.  Those rates were

slightly above the 75th percentile of attorneys whose business-litigation practices were located in Portland during the relevant periods.  The Court finds Dahlin's hourly rates charged during the appeal and at trial are reasonable based on his experience and  demonstrable skills at trial.

        c.  <u>Other Attorneys</u>.

        Attorneys Robert Newell, George Mardikes, Timothy Volpert, James Waggoner, Dennis Paterson, Kevin Kono, Andrew McStay, Michael Stephenson, and Derek Green also rendered legal services on behalf of Western Mortgage and/or the Tiegs Appellees during the relevant period.  Their hourly rates depended on their experience and ranged from $460 per hour (Robert Newell - thirty years experience) to $175 per hour (Derek Green - 4 years experience).

        The Court finds the hourly rate for each of the listed attorneys was reasonable during the relevant period in light of the attorneys' various levels of experience.

        d.  <u>Legal Assistants</u>.

        At least five legal assistants rendered services on behalf of Western Mortgage and/or the Tiegs Appellees during the relevant period.  Their hourly rates ranged from $100-$145 per hour.  The Court finds these hourly rates were reasonable for legal support staff during the relevant period.  Moreover, in

light of the four and one-half years that transpired while this
case was on appeal and tried on remand, the Court finds the
number of legal assistants who performed services in this matter
is not unusual because of the complexity of this case, the
substantial number of court filings that needed to be processed,
and the volume of documentary evidence that needed to be
organized in preparation for trial.

C.   **The Total Amount of Attorneys' Fees**.

Western Mortgage and Tiegs Appellees seek a combined total
of $474,583,[6] which includes (1) appellate attorneys' fees of
(a) $10,000 that Western Mortgage incurred in defending against
Logan's appeal of this Court's summary-judgment ruling in favor
of Western Mortgage as to the Mitsui Claim and Counterclaim and
which Western Mortgage ultimately prevailed on at trial and
(b) $96,396 that the Tiegs Appellees incurred in successfully
defending against Logan's appeal in the Ninth Circuit of numerous
other summary-judgment rulings issued by this Court in their
favor and (2) $368,187 in attorneys' fees that Western Mortgage
incurred in trying the Mitsui Claim and Counterclaim following
the Ninth Circuit's remand.

---

[6] Western Mortgage filed a "Supplemental Declaration" that
identified additional attorneys' fees incurred by Western
Mortgage after it filed its Second Motion for Attorneys Fees.
Logan filed a Supplemental Opposition.

The Court previously found Western Mortgage is entitled to reasonable attorneys' fees for each of the items described above. *See* Opin. and Order issued Nov. 19, 2009.  Logan does not object to the hourly rates charged by the attorneys for Western Mortgage but Logan objects to the amount of time (*i.e.,* billable hours) that Western Mortgage asserts were required for the appeal in the Ninth Circuit and on the Mitsui Claim and Counterclaim on remand, including attorneys' fees for pretrial, trial, and post-trial proceedings.

**1.  Appellate Attorneys' Fees.**

As noted, the Tiegs Appellees filed in the Ninth Circuit a Request for an Award of Attorneys Fees in the amount of $96,396 incurred in successfully defending against Logan's appeal of numerous adverse rulings by this Court on motions and cross-motions for summary judgment.  The Ninth Circuit transferred the attorneys' fees request to this Court.  The Tiegs Appellees continue to seek the original $96,396 for attorneys' fees that it previously requested in the Ninth Circuit as the prevailing party on the bulk of the appeal.  In addition, Western Mortgage now seeks an award of $10,000 as attorneys' fees incurred in the appeal of its Mitsui Claim and Counterclaim because Western Mortgage ultimately prevailed at trial on remand of that Claim and Counterclaim.  Western Mortgage asserts that amount is a

reasonable allocation (*i.e.*, 40%) of the $25,000 in attorneys'
fees incurred on appeal that Western Mortgage spent unsuccess-
fully defending this Court's summary-judgment rulings as to the
Mitsui Claim and Counterclaim, L3 Farm Deed Claim, and the
Doosan Claim.

Logan challenges the reasonableness of the amount claimed by
the Tiegs Appellees and Western Mortgage's allocation theory.

(a)  <u>Affidavits of Dennis Logan and Jeffrey Ware</u>.

Logan contends the combined sum of $106,936 now claimed
by the Tiegs Appellees and Western Mortgage should be reduced by
20% to account for the fact that a substantial part of the
argument on appeal by Tiegs Appellees and Western Mortgage
involved an unsuccessful effort to persuade the Ninth Circuit to
overturn this Court's Order denying the Motion to Strike
Affidavits of Dennis Logan and Jeffrey Ware filed by the Tiegs
Appellees and Western Mortgage, which Logan had offered in
support of their summary-judgment motions in both of the pending
cases.

The Court, however, is not persuaded that attorneys'
fees are not recoverable for time spent on appeal addressing an
unsuccessful argument on an evidentiary issue in the absence of a
showing that the failure of Western Mortgage and the Tiegs
Appellees to obtain an order striking that evidence on appeal had

a material impact on the outcome of the case as a whole or on the particular claims to which the evidence was directed as part of the summary-judgment proceedings.

      (b)  <u>L3 Farm Deed and Doosan Claims</u>.

      Logan also argues there should be an additional reduction of 20% in the total appellate attorneys' fees requested by Western Mortgage and the Tiegs Appellees to fairly account for the time Western Mortgage spent in its unsuccessful argument on appeal to sustain this Court's summary-judgment rulings regarding the L3 Farm Deed and Doosan claims.  The Court rejects this argument to the extent that Logan would apply the discount to Western Mortgage's entire appellate-fee request.  The Court, however, finds merit in Logan's argument to the extent it is limited to those attorneys' fees that are attributable to the three claims and counterclaims on which Western Mortgage did not prevail on appeal.

      Western Mortgage attributes $25,000 in attorneys' fees to its appellate defense of the Court's summary-judgment rulings as to the Mitsui Claim and Counterclaim and the L3 Farm Deed, and Doosan Claims.  Western Mortgage now seeks to recover 40% of that amount (or $10,000) because it ultimately prevailed on the Mitsui Claim and Counterclaim at trial on remand.  The Court, however, notes VanLeuven, in his affidavit filed in the Ninth Circuit in

support of Western Mortgage's appellate attorney-fee application,
stated counsel for Western Mortgage spent "more time on the L3
claim" and "relatively little time on appeal" addressing the
Mitsui Claim and Counterclaim and the Doosan Claim.  In light of
this earlier representation, the Court concludes a more
reasonable attorneys' fee is $5,000, which is 20% of the total
attorneys' fees attributable to the three claims and
counterclaims on which Western Mortgage lost on appeal.
Moreover, such an award is consistent with the position Western
Mortgage articulated in the Ninth Circuit.

In summary, the Court concludes Western Mortgage is entitled
to an award of $5,000 for the legal services rendered on their
behalf in the Ninth Circuit during the appeal of the Mitsui Claim
and Counterclaim.  The Court finds the Tiegs Appellees are
entitled to an award of $96,396 as reasonable attorneys' fees
arising from their services rendered in the Ninth Circuit
opposing Logan's appeal as to other claims and counterclaims.

**2.  Attorneys' Fees on Remand of the Mitsui Lease
    Claim and Counterclaim.**

In support of its attorneys' fee request on the Mitsui Claim
and Counterclaim, Western Mortgage offers Exhibit 1, which is a
30-page, item-by-item list of each time-sheet entry made by
billing attorneys and legal assistants and all of the billed
costs incurred from January 2008 through November 2009 relating

to the Mitsui Claim and Counterclaim during the remand.  The
items reflect the services rendered by the timekeeper, the hours
spent rendering the service, the hourly rate for the service
provided, and the total cost for that service.  For that period,
Western Mortgage incurred attorneys' fees totaling $385,197.
According to Western Mortgage, that sum reflects a reduction of
$90,000 in attorneys' fees incurred for legal work that
specifically related to the L3 Farm Deed Claim.  In addition to
these attorneys' fees for legal services rendered, Western
Mortgage incurred expenses in the amount of $5,280 that are
recoverable as attorneys' fees.

Western Mortgage concedes a significant portion of the time
identified in the time sheets relates to both the Mitsui Claim
and Counterclaim and the L3 Farm Deed Claim and, to a much lesser
extent, to the Doosan Claim that was settled well before trial
(*e.g.,* client conferences, settlement discussions, trial briefs,
jury instructions, and status reports to the Court).  To account
for this overlapping work, Western Mortgage reduced its request
by an additional 15%, which results in a net attorneys' fee in
the amount of $327,417.  The $327,417 equals 66% of the $492,650
in total attorneys' fees billed by Western Mortgage after remand
and, according to Western Mortgage, represents a fair allocation
of the hours spent on the Mitsui Claim and Counterclaim, the L3
Farm Deed Claim, and the Doosan Claim.

25 - OPINION AND ORDER

To that net sum of $327,417, Western Mortgage contends the following adjustments are appropriate:  An additional $5,280 in expenses (such as travel expenses and computerized legal research) that are recoverable as attorneys' fees;  $23,354 in attorneys' fees for additional legal services (including the preparation of the pending attorneys' fee petition and the preparation of a Temporary Restraining Order and Motion for Provisional Process regarding Dennis Logan's potential transfer or encumbrance of the L3 Farm before a Supplemental Judgment was entered) rendered since Western Mortgage presented its initial request; $7,810 for the expert-witness fees of Keith Meyers who prepared various reports and who was prepared to testify on behalf of Western Mortgage regarding the Mitsui Claim and Counterclaim.  Western Mortgage also suggests $5,674 should be deducted for non-compensable legal services such as those relating to the L3 Farm Deed Claim and Doosan Claim.  Thus, Western Mortgage moves for attorneys' fees incurred during the remand in the amount of $368,187 arising from the successful outcome of the trial on remand of the Mitsui Claim and Counterclaim.

In response, Logan invokes its success on remand in obtaining a jury Verdict in its favor on the L3 Farm Deed Claim. According to Logan, the substantial majority of time and expenses

incurred by Western Mortgage and Logan on remand related to the
L3 Farm Deed Claim rather than the Mitsui Claim and Counterclaim.
In support of its position, Logan has prepared Amended Exhibit A
to the Shenker Declaration, which is a copy of Western Mortgage's
Exhibit 1 that is color-coded for the purpose of categorizing
specific time-sheet entries as to which Logan takes issue.  Logan
disputes time-sheet entries totaling $33,682 for non-compensable
fees (red), $203,541 for entries reflecting unsegregated services
(yellow)(*e.g.,* services as to which there is no entitlement to
attorneys' fees), and $81,287 for overlapping attorney fee claims
(green).  Logan contends an appropriate deduction for each color
category is 100% for the red, either 50% or 75% for the yellow,
and 75% for the claims highlighted in green.  The red highlighted
fee entries, therefore, do not warrant an award of attorneys'
fees, the yellow highlighted fee entries warrant a total award of
no more than $101,771 for attorneys' fees, and the green
highlighted fee entries warrant an award of no more than  $20,322
for attorneys' fees.  Accordingly, Logan contends the total
attorneys' fee to which Western Mortgage is entitled arising from
the trial on remand of the Mitsui Claim and Counterclaim is
either $194,837 (if only 50% of the yellow highlighted fee
entries are deducted) or $143,952 (if 75% of the yellow
highlighted entries is deducted).

27 - OPINION AND ORDER

In response, Western Mortgage asserts it has performed its own line-item review of the challenged fees and has found as follows:  Of the alleged noncompensable items color-coded red (valued at $33,875), a total of $5,674 is noncompensable because that amount should be attributed either to the L-3 Farm Deed Claim or the Doosan Claim; of the alleged unsegregated items color-coded yellow, or overlapping items color-coded green, $47,054 is compensable as time spent specifically providing legal services related to the Mitsui Claim and Counterclaim.

The Court has carefully reviewed the time sheets maintained by Western Mortgage and the "color-coded" version of those time sheets presented by Logan.  The Court finds it is impossible to decipher with any degree of precision the amount of time that Western Mortgage's attorneys spent separately preparing for and trying the Mitsui Claim and Counterclaim and the first phase of the L3 Farm Deed Claim on remand.

As noted, Western Mortgage estimates 66% of its attorneys' time after remand was spent on the Mitsui Claim and Counterclaim, and it is clear that its net attorneys' fee request is based on that estimate.  The Court, however, finds Western Mortgage's estimate is high.  The Doosan Claim was settled early after remand and is not a significant factor.  The Mitsui Claim and Counterclaim and the L3 Farm Deed Claim were tried to the same

jury for the specific purpose of finding facts as to critical elements of those respective claims and defenses.  After the jury returned its Verdict as to those issues, the Court took further evidence as to the L3 Farm Deed regarding certain equitable issues.

Based on its own observations, the Court concludes a reasonable allocation of the time spent by Western Mortgage's attorneys relating to the Mitsui Claim and Counterclaim after remand through the entry of final judgment is 50% of Western Mortgage's requested fees.

Accordingly, the Court finds Western Mortgage is entitled to reasonable attorneys' fees relating to the Mitsui Claim and Counterclaim as follows:

```
    $246,325   (50% of total fees of $492,650 billed after
                 remand)
    $  5,280   (expenses payable as attorneys' fees)
    $ 23,354   (post-petition, compensable attorneys' fees)
    $  7,810   (expert-witness fees)
    $  5,000   (reasonable appellate attorneys' fees
                 relating to the Mitsui Claim and
                 Counterclaim)
   ($  5,674)  (noncompensable services relating to the
                 L3 Farm Deed claim and Doosan Claim)
```

Total: $282,095

## CONCLUSION

For these reasons, in *Logan* the Court **GRANTS** Defendant Western Mortgage's Second Motion for Attorneys' Fees (#378) in the amount of **$282,095** and **GRANTS** Western Mortgage's Request

29 - OPINION AND ORDER

for Appellate Attorneys' fees (#274) in the amount of **$5,000**.

In *OPC* the Court **GRANTS** the Tiegs Appellees' Request for an Award of Appellate Attorneys' Fees (#185) in the amount of **$96,396**.

IT IS SO ORDERED.

DATED this 2nd  day of June, 2010.


                                   /s/ Anna J. Brown
                                   ANNA J. BROWN
                                   United States District Judge


30 – OPINION AND ORDER